

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Department of Agriculture
Austin, Texas

Dear Sir:          Att'n: Charles E. Baughman

Opinion No. O-698
Re: Is the Commissioner of Agriculture au-
thorized to enter into an agreement with
the present inspector, or some other
person, to carry on the inspection work
outlined with the definite understand-
ing that no obligation in behalf of the
State be incurred and that the payment
of salaries and expenses would be sub-
ject to the availability of funds?

We are in receipt of your request for an opinion on
the following situation:

"We, therefore, request your opinion whether the
Commissioner of Agriculture would be authorized to
enter into an agreement with the present (Jacks and
Stallions) Inspector, or some other person, to car-
ry on such inspection work and supervision as might
be found necessary, with the definite understand-
ing that no obligation in behalf of the State be
incurred and that the payment of salaries and ex-
penses would be subject to the availability of funds
and the Commissioner having made such an arrangement
for the inspection service, could Post Dated Vouchers
for salary and other expenses, including traveling
expenses, be made up and presented to the Comptrol-
ler, one for each month, during the months of July
and August, to cover the entire period from Decem-
ber 1, 1939, to the end of August, 1940?" (Parenthet-
ical insertion ours).

Senate Bill 427, of the Forty-sixth Legislature, the
General Departmental Appropriation Bill for the biennium
September 1, 1939, to August 31, 1941, provides for the fol-
lowing item under the heading "Salaries and Expenses in the
Special Jack-Stallion Fund, H.B. No. 12, First Called Ses-



Department of Agriculture, page 2

sion, Forty-fifth Legislature":

|  | For the Years Ending: | |
|---|---|---|
| "64b--Inspector ........... | August 31, 1 9 4 0 | August 31, 1 9 41 |
|  | $1,800.00 | $1,800.00" |

It appears that the payment of certain breeding refunds out of the Special Jack-Stallion Fund has temporarily exhausted the monies in this account and that there will not be enough actual cash in the fund to meet the salary item from month to month prior to July 1, 1940. See Opinion No. 0-1889 of this Department by the Hon. Richard W. Fairchild, assistant attorney general, to Hon. W.Lee O'Daniel, Governor of Texas.

It is reasonably certain, however, that before the expiration of the current fiscal year, September 1, 1939, through August 31, 1940, that the fund will be augmented by the annual rentals for placed Jacks and Stallions to a sum more than sufficient to take care of the monthly salary of the Jack-Stallion Inspector.

An unfortunate crisis in respect to the 256 state-owned animals has thus arisen. It is apparent that someone must look out for them. The legislature has plainly authorized the hiring of an inspector by the Commissioner of Agriculture and provided an annual salary of $1,800.00 for him during the current biennium. This salary was to be paid out of the Jack-Stallion Fund which has been suddenly depleted as a result of unforeseen contingencies.

It is the policy of the Comptroller of Public Accounts to refuse to draw warrants against a Special Fund where there are no monies in the fund to meet the evidences of indebtedness. Yet the obligation has been created under authority of law, and the exigencies of the moment necessitate a legal solution of the problem.

The question is whether or not the Commissioner of Agriculture may enter into an agreement with the Jack-Stallion Inspector whereby the latter continues to perform the duties of his position and run the risk of being compensated in a lump-sum payment for back monthly salaries when and if funds are available in the Special Jack-Stallion Fund.

We cannot say as a matter of law that the Comptroller is under a legal obligation to draw warrants for monthly salaries in accordance with the General Departmental Appropriation Bill against an empty Special Fund account. This is

true despite the fact that sufficient revenue is expected to flow into the Special Fund before the end of the fiscal year to take care of salaries for the intervening months between the depletion of the fund and its augmentation by new revenues.

On the other hand, in the event the state employee continues to occupy his position and discharge the duties thereof with the approval of his department head, he would be entitled to compensation provided under authority of law by the legislature when monies appropriated for such purpose became available.

When monies sufficient to meet the appropriated salary have flowed into the Special Fund, the Comptroller would be legally obligated under the authority of pre-existing law, i.e., the General Departmental Appropriation Bill, to issue a warrant for back pay of the employee against the fund.

If the Special Fund out of which the salary of a state employee is payable has been temporarily depleted and the employee is able and willing to fill the position with the sanction of his department head until anticipated revenues are available in the fund, we find no legal prohibition against an arrangement or agreement between the head of the department and the employee whereby vouchers for authorized salary and authorized expenses, including proper traveling expenses, would be made up and presented to the Comptroller when there were sufficient monies in the fund to enable the Comptroller to draw warrants on it.

We reach this conclusion with full knowledge of the fact that the salary for the employee whose case is being considered was appropriated on an annual basis at $1,800.00 and that the general rider to S.B. 487 contains this provision:

"All annual salaries shall be paid in twelve (12) equal monthly installments, unless otherwise provided therein."

Where the salary is to be paid out of a Special Fund and that fund is exhausted for an interim of several months during the fiscal year, we cannot construe the above provision as an absolute bar to the payment of an annual salary on a different basis where monies subsequently become available. This is especially true of a situation like the

present where the care and preservation of valuable state-owned livestock are involved.  A different result would wipe out the Jack-Stallion Division of the Department of Agriculture and be tantamount to turning 238 state-owned animals out to snift for themselves.

Consequently, we wish to advise you that in view of the present depleted status of the Jack-Stallion Fund the Commissioner of Agriculture has the authority to enter into an agreement with the Jack-Stallion inspector to carry on such inspection work and supervision as comprise the duties of his position, with the definite understanding that no further obligation in behalf of the state than now exists is incurred, and that the payment of salary and expenses will be subject to the availability of funds; and the Commissioner having entered into such a contract for the inspection service, will be authorized to make up and present to the Comptroller a voucher for back salary and expenses, including traveling expenses, and present it to the Comptroller when and if monies were available in the Special Jack-Stallion Fund to take care of a lump-sum payment of back salaries.

We have been unable to find any legal authorities on the matter at hand, but have been guided by the nature of the emergency and the practical equities of the situation in arriving at a legal solution of the problem.  The policy of the Comptroller's Office has been taken into consideration and we are informed that precedent in that department supports such an agreement as is contemplated and that there are no objections to issuing a warrant for salary in a lump-sum unless legal prohibition exists.

It is to be noted that in this opinion we are not approving the plan of making up and presenting to the Comptroller post-dated monthly vouchers covering the period when there are no monies in the Special Fund.  This is not necessary, as the Comptroller will issue a warrant for the total back salary due when the money is available.

Furthermore, nothing in this opinion is to be construed as recognition of a larger salary than is appropriated by the legislature for the current biennium, i.e., $1,800.00 per year, or more money for traveling expenses than provided for in the General Departmental Appropriation Bill.

We refer you to previous opinions rendered by this department on the Jack-Stallion Fund, and also to Conference Opinion No. 3089 of this department by Hon. Richard W. Fairchild, assistant attorney general, to Hon. George H. Shepperd,

Department of Agriculture, page 5

Comptroller of Public Accounts, Austin, Texas, on the general subject of "traveling expenses."

　　　　Trusting we have fully answered your inquiry, we are

　　　　　　　　　　　　　　Yours very truly

　　　　　　　　　　　　ATTORNEY GENERAL OF TEXAS

　　　　　　　　By　　　　Dick Stout
　　　　　　　　　　　　　　　Assistant

DS:ob


APPROVEDNOV 29, 1939

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE